Geaham, Judge,
delivered the opinion of the court:
There is but one question to be considered — that is, whether the plaintiff is entitled to be paid for stone furnished for the erection of a dam on the .basis of cubic footage of loose stone or stone in place. The original contract provided in substance that the plaintiff should be paid for the riprap at the rate of $3.50 per cubic yard, but not until the stone in place had been inspected and accepted by the contracting officer as to quality and quantity, his decision being final. The measurements, as provided in paragraph 48" of the specifications to the original contract, were to be made as follows:
“All stone, including 3-inch bed of gravel or quarry spalls, will be measured as the volume in place when practicable to do so, otherwise as approved by the contracting officer. No deduction will be made for voids too small to be filled with stone.”
Subsequent to the execution of the contract it developed that in periods of low water, stone and other material necessary for the work could not be delivered, causing delay in the progress of the work. The contractor being financially unable to lay in a supply of the material when high water made it possible to do so, the parties entered into a supple *620 mental contract, which provided the contractor the necessary financial assistance to store up stone during periods of high water. It was therefore provided in the supplemental contract that the contractor should procure stone and deliver it at points to be designated by the contracting officer and be paid an advance payment of 40 per cent of the amount delivered based upon monthly estimates of the loose stone in piles, the remaining 60 per cent to be paid “when the stone is placed in the work.” The provision of the contract is as follows:
“ 8. That the contractor shall store at suitable places at or near the site of Lock and Dam 48, which shall meet with the approval of the contracting officer, stone of suitable size and quality, which shall be used in the construction of the dam as riprap. Upon storage of this stone and its acceptance by the contracting officer, the contractor shall be paid in monthly estimates 40 per cent of the contract price, the remaining 60 per cent to be paid when the stone is placed in the work. It is understood and agreed that from and after the initial payment the stone shalL become the property of the United States.”
It is contended by plaintiff that the supplemental contract changed the manner of payment and that he was entitled to be paid on the basis of monthly payments of stone delivered measured in the piles. Defendant holds that this was merely to cover the advance payment of 40 per cent, and apply only to that, and that the ultimate adjustment and payment were to be based on stone in place less the advance payment made. It is admitted that in the original contract payment was based on stone in place.
In the light of the findings, showing the purpose of this supplemental contract, it seems clear that it was the intention of the parties not to vary from the original plan of a final settlement upon the basis of stone in place.. The supplemental contract says that the original contract is modified in certain particulars, “ but no others,” and among the enumerated modifications is the above paragraph as to the basis of payment. The original contract, it will be seen, contemplated not only payment on the basis of stone in place but *621 final payment and settlement only after final inspection and acceptance of the completed work, with the stone in place, subject to the decision of the contracting officer as to quality and quantity.
If the plaintiff’s contention were upheld, the whole system of inspection and acceptance of the completed work and the decision of the contracting officer as to quality and quantity would be eliminated from the contract, as the plaintiff is seeking to recover payment upon the basis of loose stone which had not only not received any inspection per se but had not been placed in the work and subjected to final inspection and acceptance as a part of the work.
That such was not the intention of the parties seems too plain to require further discussion, and this is sufficient to dispose of plaintiff’s case. But the language of the supplemental agreement itself necessarily carries it back to the basis of payment fixed in the original contract.
The supplemental contract says that the plaintiff shall be paid 40 per cent of the contract price. It does not name any other price, so the price alluded to is the price to be paid according to the terms of the original contract. This method of payment must be read into the supplemental agreement to arrive at its meaning. The latter part of that agreement providing for the payment of the remaining 60 per cent “ when the s' tone is in place ” must be construed to mean, on the basis of the stone in place, for how otherwise is it possible to estimate the final payment?
Nowhere in the contract is an intention shown to purchase raw material such as stone in the loose state, nor is there a provision for payment on any other basis than the stone in place. This is the method of fixing the contract price, and the plaintiff under the supplemental agreement was to be paid on the basis of the contract price fixed in the original agreement.
The petition should be dismissed and it is so ordered.
Hay, Judge; DowNey, Judge; Booth, Judge; and Campbell, Chief Justice, concur.